## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DENNIS P. CIRCO and<br>CHRISTOPHER CIRCO, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, and | ) | 8:11CV273 |
| Counterclaim Defendants, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| DXP ENTERPRISES, INC., | ) | |
| | ) | |
| Defendant and | ) | |
| Counterclaim Plaintiff and | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CIRCO ENTERPRISES, LLC, and | ) | |
| CIRCO HOLDINGS, LLC, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

This matter is before the court on the defendant's Motion to Recover Costs (Filing No. 42). The defendant DXP Enterprises, Inc. (DXP) seeks to recover costs associated with the motion to preserve inventory (Filing No. 34) filed by the plaintiffs, Dennis P. Circo and Christopher Circo, and the third-party defendants, Circo Enterprises, LLC, and Circo Holdings, LLC, (collectively the Circo Group). DXP filed a brief (Filing No. 43) and an index of evidence (Filing No. 44) in support of its motion to recover costs. The Circo Group filed a brief (Filing No. 56) and an index of evidence (Filing No. 57) in opposition to the motion. DXP filed a brief (Filing No. 59) and indexes of evidence (Filing Nos. 60 and 62) in reply.

## BACKGROUND

This case arises from the Circo Group's sale of stock in Precision Industries, Inc. (Precision) to DXP pursuant to a Stock Purchase Agreement (SPA) entered into on August 19, 2007. DXP took control of Precision and its inventory after the sale closed in September 2007. Dennis P. Circo, alleges DXP breached the terms of the SPA when it refused to pay him under an "Earn Out" provision of the SPA, and failed to provide an

accounting required by the SPA.  Dennis Circo asserts a claim for breach of contract and a claim for an accounting to determine amounts due to him.  **See** Filing No. 1 - Complaint. Dennis P. Circo and Christopher Circo seek declaratory relief, asking the court to declare the time has passed for DXP to assert a claim with respect to representation and warranties made regarding Precision's inventory pursuant to a one year "survival clause" in the SPA.  ***Id.***  Alternatively, Dennis P. Circo and Christopher Circo ask the court to declare all representation and warranties made with respect to Precision's inventory were correct and that any claims to the contrary are without merit.  ***Id.***  DXP filed a Counterclaim and Third-Party Complaint (Filing No. 8), asserting various fraud-based claims for relief against the Circo Group based on allegations the Circo Group fraudulently misrepresented the status and value of Precision's inventory when it entered into the SPA with DXP.  On October 13, 2011, the Circo Group filed the "Motion for Preservation Order," seeking an order from this court directing DXP "to preserve, and to prohibit DXP from selling or disposing of, items of inventory that [are] the subject of DXP's Counterclaim and Third-Party Complaint, until the Moving Parties are given a reasonable opportunity to inspect said inventory."  **See** Filing No. 34 - Motion p. 1.  Specifically, the Circo Group refers to Precision's inventory, which DXP identified as unsalable, dead or excess (UDE Inventory).

As an initial matter, DXP suggests "every item of UDE Inventory was turned over to DXP by the Circo Group in connection with DXP's purchase of Precision under the SPA," and therefore the Circo Group had access to the inventory and accounting records including date codes for the inventory at issue.  **See** Filing No. 43 - Brief p. 7.  Moreover, "[o]n at least three occasions between August 2010 and April 2011, [Dennis] Circo or his representatives and/or other representatives of the Circo Group inspected Precision inventory determined by DXP to be unsalable, dead, and/or excess."  **See** Filing No. 44 - Ex. 2, Pellman Aff. ¶ 8.  According to DXP, "[o]n at least one occasion in January 2011, the Circo Group declined an offer to inspect inventory from a Precision branch office that DXP had determined to be unsalable and instead requested and received copies of the unsalable inventory photographs maintained by DXP."  ***Id.*** ¶ 9.  Furthermore, DXP argues that on January 16 and April 27, 2011, DXP provided Dennis Circo with a copy of DXP's database which included "all UDE Inventory acquired from Precision . . ., including whether

2

it is classified as unsalable, dead, or excess and the reason for such classification." *Id.* ¶ 4.

In an April 2011 email exchange, Perry Pellman, Omaha Vice President of Purchasing at DXP, informed the Circo Group that DXP was preparing the inventory to be sold at auction. **See** Filing No. 44 - Ex. A. Dennis Circo replied he wanted to inspect and photograph the inventory. *Id.* DXP's auctioneer, Grafe Auction, held several auctions of Precision inventory for DXP, including an online auction that closed for bidding on August 15, 2011. Paul McCartan from Grafe Auction spoke with Dennis Circo about bidding on items in the August 15 auction. McCartan spoke with Circo again on September 28, 2011, about another auction of Precision inventory tentatively scheduled for October 10, 2011. **See** Filing No. 38 - Ex. 2, McCartan Aff. ¶ 9. They discussed possible dates for the Circo Group to preview the auction inventory but no plans were finalized. *Id.* ¶ 10. On October 6, 2011, Grafe Auction changed the close of bidding from October 10, 2011, to October 17, 2011. *Id.* ¶¶ 11-12. In an October 6, 2011, email sent by Diane Harding at the Circo Group, Dennis Circo informed McCartan that the Circo Group was "very interested in bidding on part or all of the next auction" and asked McCartan if a postponement of the auction was possible to allow the Circo Group time to inspect the product. *Id.* at Ex. A. McCartan responded later that day informing Harding a postponement was not possible. *Id.* at Ex. B.

In an exchange of emails on October 12 and 13, 2011, counsel for the parties discussed the Circo Group's request for delay of the October 17 auction for a period of twenty-one days to allow for the Circo Group's inspection of the UDE Inventory. **See** Filing No. 35 - Ex. A; Filing No. 38 - Exs. A and B.[1] DXP's efforts to have the Circo Group inspect the UDE Inventory on October 14 or 15, 2011, were rejected as inadequate by counsel for the Circo Group. **See** Filing No. 38 - Exs. A and B. On October 13, 2011, the Circo Group served DXP with a Request for Inspection of Property (Filing No. 35 - Ex. B) and filed a "Motion for Preservation Order" (Filing No. 34) to delay the October 17 auction.

---

[1] Filing Nos. 35 and 38 are indexes of evidence filed by the parties in reference to the Circo Group's Motion for Preservation Order and are referenced by the parties in their briefing on the matter of DXP's Motion to Recover Costs.

In response, DXP instructed the auctioneer to cancel the auction.  **See** Filing No. 44 - Ex. 2, Pellman Aff. ¶ 11.

In its "Motion for Preservation Order", the Circo Group asked the court for "at least 21 days to conduct an inspection" of the UDE Inventory set for auction with the close of bids on October 17, 2011.  **See** Filing No. 34.  On October 14, 2011, DXP filed a brief (Filing No. 37) and index of evidence (Filing No. 38) in response, noting it had postponed the auction at great expense rendering the Circo Group's motion moot.  Also on October 14, 2011, approximately nine representatives of the Circo Group, including Dennis Circo, inspected the UDE Inventory previously scheduled for auction during a scheduled public preview.  **See** Filing No. 44 - Ex. 1, McCartan Aff. ¶¶ 3-5.  The auctioneer, Paul McCartan, was surprised to see representatives of the Circo Group at the public preview based on the Circo Group's earlier statements to McCartan that it was unable to attend the public preview on the scheduled date.  *Id.* ¶ 5.  After approximately four hours spent inspecting the inventory, Dennis Circo informed McCartan the Circo Group was done with its inspection and would not be returning.  *Id.* ¶ 9-10.

However, the Circo Group subsequently informed the court that another inspection was necessary and scheduled to occur on November 4, 2011, and asked that DXP be required to preserve the inventory through that date.  **See** Filing No. 41 - Status Report p. 3.  Prior to reviewing the Circo Group's status report, McCartan was unaware "that the Circo Group planned any such further inspection of the Auction Inventory."  **See** Filing No. 44 - Ex. 1, McCartan Aff. ¶ 13.  In response to the Circo Group's representations, DXP further delayed auction of the inventory through the November 4, 2011, inspection date.  **See** Filing No. 43 - Brief p. 3.  Based on DXP's representation, the court denied the Circo Group's motion to preserve inventory (Filing No. 34) as moot.  **See** Filing No. 48. Ultimately, the Circo Group did not return by November 4, 2011, or anytime afterward, to further inspect the inventory.  **See** Filing No. 56 - Response p. 3-4.

In its motion to recover costs, DXP contends the Circo Group "caused DXP undue burden and expense by unfairly and unnecessarily demanding DXP cancel the [October 17, 2011, auction], feigning it had an inability to inspect the UDE Inventory before the Auction, and then proceeding with the inspection anyway."  **See** Filing No. 43 - Brief p. 6.

DXP insists the Circo Group had ample opportunity to inspect the UDE Inventory both prior to the auction announcement as well as during the period of time between the announcement and the scheduled close of bidding. *Id.* at 7. According to DXP, "[b]etween August 2010 and April 2011, the Circo Group inspected or declined the opportunity to inspect all of the UDE Inventory." *Id.* ¶ 10.

The Circo Group contends DXP has an obligation to preserve evidence within its possession or control and the Circo Group should not be held responsible for any expenses DXP incurred in cancelling or postponing the auction of the inventory designated by DXP as UDE Inventory. See Filing No. 56 - Response. Dennis Circo states he learned of the auction on October 6, 2011, just 11 days before the October 17 auction. **See** Filing No. 57 - Ex. 2, Circo Aff. ¶ 2. He contends he "received no notice from DXP regarding this auction or that inventory that is the subject of DXP's Counterclaim and Third-Party complaint would be listed for sale at this auction." *Id.* Dennis Circo claims the Circo Group's October 14, 2011, inspection of the inventory was scheduled before he was aware of DXP's intention to postpone the auction. *Id.* ¶ 3. He further claims that DXP had not provided the Circo Group "with an itemization identifying which items of inventory listed for sale at the auction originally scheduled for October 17 were items that DXP alleges are 'obsolete, excess, damaged, slow-moving or otherwise unusable.'" *Id.* The Circo Group contends the October 14, 2011, inspection was not sufficient in the absence of information from DXP regarding identification of the auction inventory as inventory which is the subject of DXP's counterclaims and third party claims. **See** Filing No. 56 - Response p. 3; Filing No. 57 - Ex. 2, Circo Aff. ¶ 4. The Circo Group anticipated needing additional time to inspect the inventory after receiving an itemization from DXP. **See** Filing No. 41 - Status Report p. 2. On October 26, 2011, upon learning DXP possessed no such itemization, the Circo Group determined that further inspection would be fruitless. **See** Filing No. 56 - Response p. 3-4; Filing No. 57 - Ex. 2, Circo Aff. ¶ 5.

## ANALYSIS

Once the requesting party meets the threshold relevance burden, generally "[a]ll discovery requests are a burden on the party who must respond thereto." ***Continental Ill.***

*Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684-85 (D. Kan. 1991) (citation omitted).  However, federal courts are vested with inherent powers "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (**quoting** *Link v. Wabash R. Co.*, 370 U.S. 626, 630-631 (1962)).  "Because of their very potency, inherent powers must be exercised with restraint and discretion.  A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45 (citation omitted).  "Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses." *Great Northern Ins. Co. v. Power Cooling, Inc.*, No. 06CV874, 2007 WL 2687666, at *7 (E.D.N.Y. Sept. 10, 2007) (**quoting** *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 267 (2d Cir. 1999)).  A requesting party may be required to reimburse a producing party for future costs associated with an inspection request made in the course of discovery when the requesting party had a previous opportunity to inspect.  **See** *Shaker Village Condo. Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 08-61935-CIV, 2010 WL 431461, at *1-2 (S.D. Fla. Feb. 2, 2010) (defendant insurance company ordered to reimburse plaintiff condo association for costs associated with providing owners with notice of future inspections when, prior to litigation, defendant's representatives had been on the property to observe storm damage).

The Circo Group's "Motion for Preservation Order" was essentially a motion for protective order under Federal Rule of Civil Procedure 26(c) "specifying terms, including time and place, for the disclosure or discovery."  **See** Fed. R. Civ. P. 26(c)(1)(B).  In response to that motion, DXP cancelled the auction, and incurred costs associated with the cancellation.  DXP later agreed to postpone auction of the UDE Inventory until after November 4, 2011, as requested by the Circo Group.  As a result, the Circo Group's motion became moot and the court was not required to address its merits.  **See** Filing No. 48 - Order.  Had such a determination on the merits of the Circo Group's motion been required, the court would have granted the motion, in part, and denied the motion, in part. "If the motion is granted in part and denied in part, the court . . . may, after giving an

opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C); **see** Fed. R. Civ. P. 26(c)(3). The parties have been heard on this matter in their briefing of DXP's "Motion to Recover Costs."

DXP failed to give the Circo Group appropriate notice of the auction of the UDE Inventory which is the subject of DXP's counterclaims and third-party claims against the Circo Group. Although evidence suggests the Circo Group was aware of the impending auction of the UDE Inventory as early as September 28, 2011, that notice did not come from DXP. Moreover, DXP has not disputed the Circo Group's claim that DXP did not directly notify the Circo Group of the October 17 auction. The court finds DXP had the responsibility to do so.

However, once the Circo Group became aware of the impending auction, it had sufficient time and opportunity to inspect the UDE Inventory prior to the scheduled October 17, 2011, auction, despite its claims otherwise. The Circo Group initially had access to the inventory when it was in Precision's possession. Between August 2010 and April 2011, after the sale to DXP, the Circo Group inspected the inventory on several occasions. In January and April 2011, the Circo Group received copies of DXP's database, which included detailed information about the inventory determined to be UDE Inventory by DXP. In April 2011, DXP informed the Circo Group of DXP's intention to auction the Precision inventory. Although the Circo Group may not have been aware of the October 17, 2011, auction until October 6, 2011, DXP and the auctioneer made the inventory available for inspection by the Circo Group.

On October 13, 2011, the Circo Group rejected DXP's proposal that it inspect the UDE Inventory on October 14 or 15, 2011. Also on that date, the Circo Group filed the "Motion for Preservation Order" asking the court to order DXP "to preserve, and to prohibit DXP from selling or disposing of, items of inventory that [are] the subject of DXP's Counterclaim and Third-Party Complaint, until [the Circo Group is] given a reasonable opportunity to inspect said inventory." **See** Filing No. 34 - Motion p. 1. The Circo Group did not "request[ ] that DXP be forever barred from selling the inventory or that it be required to store it indefinitely, only that [the Circo Group] be given 21 days to arrange for and conduct an inspection of the inventory before it is sold or otherwise disposed of." **See**

Filing No. 36 - Brief p. 7.  As a result, DXP postponed the auction scheduled to close bidding on October 17, 2011.  Then, contrary to its representations to DXP, the Circo Group did inspect the inventory on October 14, 2011, and ultimately concluded that no further inspection was necessary.

The Circo Group's argument that it did not force DXP to cancel or postpone the October 17, 2011, auction is disingenuous.  DXP delayed the scheduled auction in response to the Circo Group's motion to preserve evidence and to avoid giving the Circo Group the opportunity to accuse DXP of spoliation of evidence.  See Filing No. 43 - Brief p. 3.  Given the tenor of correspondence between the parties and the Circo Group's repeated assertion that DXP has an obligation to preserve evidence relevant to the litigation, such an accusation does not seem out of the realm of possibility.  The court further finds the Circo Group failed to show its requested twenty-one day delay was reasonable given the Circo Group's access to the inventory prior to DXP's acquisition and the numerous inspections and the database information provided to the Circo Group subsequent to DXP's acquisition.  Though perhaps not initially anticipated by the Circo Group, the four-hour inspection on October 14, 2011, proved to be sufficient.  As such, the expenses associated with the cancellation were unnecessary.

The court notes that the parties might have resolved their differences without court intervention and avoided the time and expense associated with briefing the issues for the court with respect to both the motion to preserve inventory and this motion for costs. Additionally, in the absence of collaboration and cooperation in this matter, DXP has incurred significant costs, $23,350.00, associated with delaying the auction of the UDE Inventory.  See Filing No. 62 - Supplemental Index.  The court has reviewed the affidavit and invoice filed in support of DXP's motion and finds the amounts are reasonable. *Id.* Under the circumstances, the court finds the costs should be shared by the parties. Accordingly, DXP's motion will be granted in the amount of $11,675.00.   Upon consideration,

**IT IS ORDERED:**

1.      The defendant's Motion to Recover Costs (Filing No. 42) is granted, in part.

2.      The plaintiffs and the third party defendants shall pay the defendant, by certified or cashier's check **on or before 5:00 p.m., CDT, January 31, 2012, the sum of $11,675.00**, and file a notice with the court as verification of payment.

## ADMONITION

Pursuant to NECivR 72.2 any objection to this Order shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order.  Failure to timely object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 10th day of January, 2012.

BY THE COURT:

 s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.